IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01686–RM–KMT

BELICE PLIEGO on her own behalf and on behalf of all others similarly situated,

      Plaintiff,

v.

LOS ARCOS MEXICAN RESTAURANTS, INC., d/b/a Los Arquitos Mexican Restaurant, Los Arquitos, Los Arquitos, Inc., Los Arcos, Inc. and Los Arcos Mexican Restaurant,
AMR-LONE TREE, INC., d/b/a Los Arcos Mexican Restaurant,
AMR-WESTLAND, INC.,
JUAN LUEVANO,
IGNACIO LUEVANO,
RAMON LUEVANO,
SANDRA LUEVANO, and
LIZ LUEVANO,

      Defendants.

---

## ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

---

This matter is before the court on the parties' "Joint Motion for Preliminary Approval of Proposed Class Action Settlement" [Doc. No. 70] ("Joint Mot."). The parties have consented to Magistrate Judge disposition of these two motions pursuant to 28 U.S.C. § 636(c)(1) and D.C.COLO.LCivR 72.2. [Doc. No. 72.] Thereafter the motions were referred to this court by District Judge Raymond P. Moore. [Doc. No. 73.] The court has reviewed the motions, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

On June 17, 2014, Plaintiff filed this collective and class action lawsuit.  (Compl. [Doc. No. 1].)  Plaintiff alleged that Defendants violated the FLSA and the Colorado Minimum Wage Order (7 CCR 1103-7) (the "MWO") by failing to pay overtime premiums to current and former employees.  Plaintiff has further alleged that Defendants improperly rounded their current and former employees' hours and improperly charged their employees for employer-required uniforms.  The settlement Proposed resolves both FLSA claims as an opt-in collective and the MWO claims pursuant to the opt-out provisions under Fed. R. Civ. P. 23.

***Settlement Terms***

The Parties stipulate to the certification of an Opt-in/Rule 23 Class consisting of "All individuals employed by Defendants at the Westminster and Lone Tree Los Arcos Restaurants between June 17, 2011 and July 20, 2014."  (Joint Mot. at 4.)

The Settlement Agreement [Doc. No. 70-2] provides that Defendants will make a reversionary Settlement Payment of $178,928.84 into a Settlement Fund to compensate Plaintiff and the combined Opt-in/Rule 23 Class (collectively, the "Class") for their damages and liquidated damages, inclusive of attorney fees and costs.  In addition to the Settlement Payment, Defendants will pay settlement administration costs, including all charges of the Settlement Administrator as well as the costs of class notice and notice of proposed settlement.  Also in addition, Defendants will pay the employer's portion of required withholding and payroll taxes per the terms of the Settlement Agreement, attached as Exhibit 2 to the Joint Motion. The Members of the Class shall be responsible for paying their own respective federal, state and local tax obligations.

The Settlement Agreement includes a proposed settlement payment and distribution plan. The individual settlement allocation for each Class Member is contained in Exhibit A to the Settlement Agreement. Payments to the Plaintiff and the Opt-in/Rule 23 Class Members will be allocated as follows: After payment of amounts for uniform charge violations, one-half of each award is attributable to back wages, is subject to payroll tax withholding and will be reported by Defendants or the Settlement Administrator per IRS Form W-2. The remaining one-half of each share will be attributable to FLSA liquidated damages, and will not be subject to payroll tax withholding and will be reported by Defendants or the Settlement Administrator per IRS Form 1099.

The Settlement Fund is reversionary. Any remaining amounts after all submitted claims have been satisfied, Plaintiff's damages and service award have been paid, and attorney fees and costs deducted, shall revert to Defendants.

The Settlement Agreement provides for appointment of Settlement Services, Inc., as Settlement Administrator to administer the settlement process under the supervision of the Parties' counsel and the Court. The settlement process set forth in the Settlement Agreement provides for notice to the proposed Class and an opportunity to opt-in or opt-out of the settlement or to object to the settlement.

The Parties have agreed to the payment of a service award to Class Representative Belice Pliego in the amount of $7,500.00 from the Settlement Fund.

Plaintiff's counsel seeks an award of 33% of the Settlement Fund ($59,046.52), claiming this percentage to be a customary fee.[1]

---

[1] Addressed more fully in "Plaintiff's Motion for Attorney Fee." [Doc. No. 71.]

In exchange for the settlement, Plaintiff and Members of the Opt-In/Rule 23 Class and Class Members who do not timely opt-out of the Rule 23 Class will release Defendants from all claims pleaded in the Action and all claims for rounding and uniform charge violations whether arising under state or federal law, including the FLSA.

### LEGAL STANDARD

Proceeding with the proposed settlement means that the case will become a "hybrid" class action, with a smaller opt-in class with respect to the FLSA claims and a larger opt-out class with respect to the state law claims under Rule 23.

### A.    Jurisdiction

This court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (Fair Labor Standards Act), and 28 U.S.C. § 1367 (supplemental jurisdiction). The parties have not briefed or addressed the issue of supplemental jurisdiction, but in a decision from this district, Judge Daniel declined to exercise supplemental jurisdiction over a Rule 23 state law class action together with FLSA claims.  *See In re American Family Mut. Ins. Co. Overtime Pay Litigation,* 638 F. Supp. 2d 1290, 1298–1302 (D. Colo. 2009)(declining to exercise supplemental jurisdiction over state law Rule 23 portion of "hybrid" class action because doing so would "would undermine Congress's intent to limit the number of plaintiffs in a FLSA action").  However, several other courts in this district have exercised supplemental jurisdiction over a Rule 23 state law class claim in similar circumstances because requiring two parallel actions "would not serve the interests of judicial economy, convenience, and fairness."[2]

---

[2] This, of course, begs the question of the preclusive effect of a hybrid judgment on a Rule 23 class member who failed to opt-in to the FLSA action.  *Kuncl v. Int'l Bus. Machines Corp.*, 660 F. Supp. 2d 1246, 1250-51 (N. D. Okla. 2009).

*Bass v. PJCOMN Acquisition Corp.,* No. 09–cv–01614–REB–MEH, 2011 WL 2149602, *5 (D. Colo. June 1, 2011); *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-CV-1048-JLK, 2015 WL 1524639, at *1 (D. Colo. Mar. 31, 2015). This court likewise finds that the exercise of supplemental jurisdiction to combine consideration of the FLSA collective claim and the state law Rule 23 class claims is appropriate in this case.

> **B.     *Hybrid Class Action***

The filing of hybrid lawsuits involving both a Rule 23 class action and a FLSA collective action is a relatively recent trend. *See* Thomas A. Linthorst & Richard G. Rosenblatt, *Wage and Hour Class Actions: Courts Grapple With Conflict Between Rule 23 and FLSA's Opt-in Requirement,* 188 N.J. L.J. 118 (April 2007). Hybrid actions have troubled district courts across the country because of the inherent conflict between the opt-in requirement of FLSA collective actions and the opt-out provisions of Rule 23(b)(3) class actions.

Class actions based on state wage laws are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 allows one or more class members to sue, as a representative party, on behalf of all class members as long as certain prerequisites are met. Fed. R. Civ. P. 23(a). If the court certifies the class under Rule 23(b)(3), class members must be sent notice that, among other things, informs them of the nature of the action, their right to exclude themselves from the action, and the binding effect of the class judgment. Any member who does not wish to be bound by the judgment must timely exclude themselves by affirmatively opting-out of the class. Fed. R. Civ. P. 23(c)(2)(B).

On the other hand, group actions brought asserting FLSA rights are known as collective actions and are governed by § 216(b) of the FLSA. "Congress enacted the FLSA in 1938 with

the goal of protect[ing] all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2162 (2012). The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 n.18 (1945). To help further its goals, the FLSA provides that an employee or multiple employees may bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Section 216(b) of the FLSA states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . ." 29 U.S.C. § 216(B). Based on this language, courts have found that employees must affirmatively opt-in to the case in order to be bound by a judgment in FLSA collective actions. Employees who do not opt-in are not similarly bound by the results of the litigation, including any settlement. *See Dolan v. Project Constr. Corp.,* 725 F.2d 1263, 1266 (10th Cir. 1984), *abrogated on other grounds by Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165 (1989).

One of the more significant effects of using either an opt-in or opt-out scheme is the resulting class size. "Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in." Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions,* 58 Am. U. L. Rev. 515 (February 2009). The most probable explanation for the low response rate is the idea that "the notice received in the mail is just another piece of junk that the

recipient has neither the time nor the interest to read, let alone act on." *Ellis v. Edward D. Jones & Co.,* 527 F. Supp. 2d 439, 444 (W.D. Pa.2007) (citing Noah H. Finkel, Symposium, *The Fair Labor Standards Act, State Wage–and–Hour Law Class Actions: The Real Wave of "FLSA" Litigation?,* 7 Emp. Rts. & Emp. Pol'y J. 159, 161, 174 (2003)). *See Kuncl,* 660 F. Supp. 2d at 1251. This theory behind low opt-in rates in collective actions is also the most likely explanation for the low opt-out rates in Rule 23 class actions. *Id.* at 445. Because of these low opt-in and opt-out rates, Rule 23 classes are generally "much larger than the corresponding § 216(b) collective action groups" and the large group is bound by the ultimate judgment if they don't opt-out. *Id.* By filing a hybrid action, plaintiffs, or more aptly their attorneys, are attempting to bring large class/collective actions in federal court by using the Rule 23 opt-out procedure to avoid the opt-in requirement that would be applicable to a pure FLSA collective action. Employers are sometimes the beneficiaries of this tactic because of the binding nature of the class result on future individual litigation. Having the Rule 23 opt-out provisions as part of a settlement will often result in increased attorney's fees for the class attorney, because, just as in this case, the lawyer can be compensated on the percentage basis of the totality of the damages of all the affected workers, not just those who actively join the case and receive their benefit.

A number of district courts in California, in cases where some or all of a fund set aside to pay FLSA claims regarding earned wages will go back to an employer, have been considering whether it would be contrary to § 216(b) to bind putative collective members to a release of FLSA claims by virtue of their failure to opt-out of the Rule 23 class action where the members have not affirmatively elected to participate in the lawsuit by filing a written consent form. *See e.g. Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 612 (E.D.Cal. 2015) (where "a

statute's objectives include deterrence, as does the FLSA's, 'it would contradict these goals to permit the defendant to retain unclaimed funds.'"). *See also Khanna v. Inter–Con Sec. Sys. Inc.,* No. CIV S–09–2214 KJM GGH, 2012 WL 4465558, at *11 (E.D.Cal. Sept. 25, 2012) (quoting, *inter alia, Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1308 (9th Cir. 1990)); *La Parne v. Monex Deposit Co.,* No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at *4 (C.D.Cal. Nov. 29, 2010) ("Relatively low interest in settlement does not mean that [a] [d]efendant should receive a windfall benefit as a result of absent class members failing to submit claims" in light of the deterrent goals of the FLSA.)  In these cases, as in the case at bar, the Settlement Agreement does not separate the settlement fund based on claims; it simply proposes to distribute payments with respect to all of the claims based on hours worked by the class members.  This line of cases, of course, is not binding on this court.

While courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim, the most recent cases arising in this District tend toward approving such arrangements.  *Bass,* 2011 WL 2149602 at *5; *Lozoya v. AllPhase Landscape Constr., Inc.*, No: 12–cv–1048–JLK, 2015 WL 1524639, *1 (D. Colo. Mar. 31, 2015).  *But see In re American Family Mut. Ins. Co. Overtime Pay Litigation,* 638 F. Supp. 2d at 1298–1302.  This case is at the settlement stage and both sides have agreed to treat the settlement as a hybrid action.  The putative Class Members are identical for the FLSA claims and the state MWO claims.  The putative Class Members in this case are low wage employees of a restaurant, many of whom are not United States citizens.  Without the vehicle of class notice, most would never know of the alleged wage violations and would have never brought overtime issues to the attention of the employer.  With ample current

precedent to support proceeding with a hybrid class action, the court will allow such a settlement class here.

**ANALYSIS**

The review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice; (2) dissemination of mailed and/or published notice of the settlement to all affected settlement class members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004).

**A.     *Preliminary Certification of Opt-In/Rule 23 Class***

On July 31, 2015, this court conditionally certified the FLSA collective as "All hourly employees who worked on or after June 17, 2011 and who were not paid overtime premiums for overtime hours worked."  (Order, [Doc. No. 69] at 7.)  To effectuate their settlement, the parties now seek to modify the FLSA collective description and seek preliminary certification of a Rule 23 Class defined as: "All individuals employed by Defendants at the Westminster and Lone Tree Los Arcos Restaurants between June 17, 2011 and July 20, 2014."  (Joint Mot. at 9.)

The parties present the court with a "settlement only class."  In other words, prior to certification of a Rule 23 Class, the parties have reached an agreement to settle, but in order to attempt to gain approval of the class members, a class must be court sanctioned and defined.  In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court addressed the

settlement class issue. The Supreme Court held that a district court faced with a settlement only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for Rule 23 class certification must still be satisfied. *Id.* at 620. Thus, any request for preliminary approval of a class settlement should include a section on why certification would be appropriate under the Rule.

Fed. R. Civ. P. 23 provides

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

### 1.    *Numerosity*

To satisfy Rule 23's numerosity requirement, the class must be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class . . . ." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 205-2320 SBA, 2006 WL 2642528, at *4 (N. D. Cal. Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010).

Through payroll records of the Defendants, the parties have identified 177 putative members of the defined Class.  The court finds that this satisfies the numerosity requirement. *See Bass,* 2011 WL 2149602 at *2 (joinder of between fifty and three hundred pizza delivery drivers is impractical);  *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-22293-MSK-MJW, 2012 WL 4463869, at *5 (D. Colo. Sept. 27, 2012) (one hundred potential class members is a number that certainly prevents effective joinder.) *on reconsideration in part sub nom. A-W Land Co., LLC v. Anadarko E & P Co. LP*, No. 09-CV-02293-MSK-MJW, 2013 WL 3199986 (D. Colo. June 24, 2013).

### 2.    *Commonality*

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010).  Class members must "possess the same interest and suffer the same injury."  *Trevizo v. Adams,* 455 F.3d 1155, 1163 (10th Cir.2006), *citing General Telephone Company v. Falcon,* 457 U.S. 147 (1982). Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy.  *J.B. ex rel Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir.1999).  The crux of the commonality examination is not simply that there are commonalities among the potential class members, but rather, whether a class wide proceeding will be efficacious in "generat[ing] common *answers* apt to drive the resolution of the litigation."  *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011)(emphasis in original).  *See also A-W Land Co.*, 2012 WL 4463869, at *3.

Here, the court finds that whether the putative Class Members were subject to the same alleged company-wide policies of non-payment of overtime premiums, unlawful rounding

practices and unlawful uniform charges are questions of law common to all Members of the Class.

### 3.      *Typicality and Fair Representation*

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass,* 2011 WL 2149602, at *3.  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiff challenged Defendants' application of an alleged overtime avoidance policy, unlawful rounding of hours and unlawful uniform charges, all of which constitute conduct allegedly universally applied to the proposed class of employees.  Because Plaintiff's claims challenge the same conduct under the same legal and remedial theories as do the claims of the absent class, the claims meet the typicality standard.

The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010).  Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002)(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any

doubt regarding adequacy of representation should be resolved in favor of upholding the class,

subject to later possible reconsideration . . . . " *Schwartz v. Celestial Seasonings*, 178 F.R.D.

545, 552 (D. Colo. 1998).  However, presumption aside, in this 'settlement only class'

determination, it is clear from the settlement itself that Plaintiff has prosecuted the action

vigorously on behalf of the class through counsel.

### 4. *Fed. R. Civ. P. 23(b)*

Rule 23(b) requires a party seeking class certification to show either: (i) separate actions

by class members would create a risk of inconsistent adjudications affecting the rights or

obligations of class members or Defendants; (ii) that the Defendants have acted or refused to act

on grounds applying generally to the class, such that class-wide injunctive relief is appropriate;

or (iii) that the common questions of fact or law predominate over individual questions.  Fed. R.

Civ. P. 23(b)(1)-(3).

The court finds that questions of law and fact common to class members predominate

over individual issues and that the class action is the superior method for adjudicating this case.

In deciding predominance under Rule 23(b)(3), the Court

> must determine whether the members of the class seek a remedy to a common
> legal grievance and whether the common questions of law and fact central to the
> litigation are common to all class members.  Classwide issues predominate if
> resolution of some of the legal or factual questions that qualify each class
> member's case as a genuine controversy can be achieved through generalized
> proof, and if these particular issues are more substantial than the issues subject to
> only individualized proof.

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655

(W.D. Okla. 2012)(internal citations omitted).  This case involves a controversy spanning

Defendants' hourly wage workforce and recurring each time an hourly worker was paid. The

representative Plaintiff's claims and those of the class arise from the same legal grievances, and questions common to these claims regarding the mechanics and administration of Defendants' payroll system, whether Defendants' overtime policy violated the law, and Defendants' good faith defense will be litigated repetitively if these claims are not aggregated. "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass*, 2011 WL 2149602, at *4.

The class action is a superior method of adjudicating the instant case because the absent Class Members to date have shown no interest in controlling the litigation of separate actions and because no other litigation regarding this controversy has been commenced.  The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers, most of whom lack English proficiency, and most of whom were paid at or near the minimum wage.  Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued.  *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243, at *2 (D. Colo. May 28, 2013); *Maez, 268 F.R.D.* at *397; Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998).

Having satisfied the prerequisites of Rule 23 and of the FLSA, at least sufficiently for a settlement only certification, the court shall preliminarily certify the Rule 23 Class and the FLSA Collective, which shall be collectively defined as "All individuals employed by Defendants at the Westminster and Lone Tree Los Arcos Restaurants between June 17, 2011 and July 20, 2014."

**B.      *Preliminary Approval of Terms of Settlement.***

In the context of settlement of an FLSA collective action, a district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution (sic) of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982).  If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation.  *Fulton v. TLC Lawn Care, Inc.,* CIV.A. 10-2645-KHV, 2012 WL 1788140, at *2 (D. Kan. May 17, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1354).  In applying this analysis, the district court should examine four factors: (1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair?  *Lynn's Food Stores,* 679 F.2d at 1353-54.

In the context of approval of a Rule 23 class settlement, courts engage in a two-step process to ensure the fairness of any class action settlement.  *Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 666-67 (D. Colo. 2015)(citing NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.))  The instant Motion pertains to the first step of this process, in which the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.  *See id.*  The object of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *Id.* § 13:13; *see also*

15

*Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing"); *In re Motor Fuel Temperature Sales Practices Litig.,* No. 07–MD–1840, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011) (internal quotation omitted) ("The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.")  If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections. NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.)

The second step involves a final fairness hearing, at which point class objectors (if any) may provide testimony, and the Court again decides whether the settlement is fair, reasonable, and adequate in light of all the circumstances.  *Id.* § 13:42; *Rhodes,* 308 F.R.D. at 667.  *See* Fed. R. Civ. P. 23(e)(2)(a class action settlement must be "fair, reasonable and adequate.")  In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). Although the Court will consider these factors in depth at the final approval hearing, they also

provide a useful guide at the preliminary approval stage.  *In re Motor Fuel Temperature Sales Practices Litig.,* 258 F.R.D. 671, 680 (D. Kan. 2009).

Given that this is a settlement of a hybrid action, this court will combine the factors applicable to preliminary approval of an FLSA action with those for approval of a Rule 23 class settlement in determining whether preliminary approval of the settlement should be given.

### 1.   *Bona Fide Dispute in an Adversarial Context Concerning Disputed Questions of Law and Fact*

To meet their obligation to prove a bona fide dispute, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  *Baker v. Vail Resorts Mgmt. Co.*, No. 13-CV-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014); *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010); *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008).  The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement.  *Id.*

This case was litigated, and the proposed settlement was reached, in the context of Plaintiff's federal collective and class action lawsuit which was filed on June 17, 2014.  [Doc. No. 1, Class and Collective Action Complaint.]  An Answer and an Amended Answer were filed by the Defendants [Doc. No. 13 and 20].  Scheduling Orders were entered on February 12, 2015 [Doc. No. 36] and on May 4, 2015 [Doc. No. 52].  The parties began negotiating in earnest in

November 2014 and continued until this motion was filed on September 15, 2015.  The parties

were both represented by counsel with extensive experience in wage and hour litigation.

Counsel have represented that they reviewed voluminous wage and hour records relating

to the proposed Class Members. The Parties engaged in prolonged and contested negotiations

and engaged in settlement conferences before this court on June 1, 2015 [Doc. No. 56] and on

June 29, 2015 [Doc. No. 64]. The Parties' counsel utilized their respective experience with

similar employment matters, and thoroughly analyzed the legal and factual issues in this case.

The Supreme Court has defined sham litigation as a lawsuit that is objectively baseless in

the sense that no reasonable litigant could realistically expect success on the merits.  *Prof'l Real*

*Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60–61 (1993).  *See also Total*

*Renal Care, Inc. v. Western Nephrology and Metabolic Bone Disease, P. C.,* Case No. 08–cv–

00513–CMA–KMT, 2009 WL 2596493, at *9 (D. Colo. Aug. 21, 2009).  Sham litigation by

definition does not involve a bona fide grievance.  *Protect Our Mountain Env't, Inc. v. District*

*Court,* 677 P.2d 1361, 1369 (Colo. 1984).

From direct experience with the case, this court finds that this case is not sham litigation

and that it very much involves a bona fide dispute between adversarial opponents.  The facts

surrounding the uniform issue were particularly hotly contested with differing offers of proof on

both sides.

### 2.     *Attorney Representation by Competent and Experienced Counsel*

As of the current date, Mr. Milstein, counsel for Plaintiff Class, is listed as counsel in 33

cases in the Colorado federal District Court, almost all in cases involving FLSA and other wage

related claims.  Mr. Eurich, attorney for the Defendants, is associated with Holland & Hart, one

of the largest law firms in Denver, and is listed as counsel in 188 cases in this court.  Both

counsel are well-known to this court as competent counsel with vast experience in wage-related

litigation.

Counsel for the proposed Class, Brandt Milstein, specializes in collective and class action

wage and hour litigation on behalf of immigrant workers.  Proposed Class Counsel represents

that he focuses his practice in this highly technical area and has litigated numerous cases under

the FLSA and the MWO, and other states' wage and hour laws.  Plaintiff's counsel has extensive

experience in FLSA 216(b) collective actions and Rule 23 class actions.  *See, e.g., Ramirez et al.*

*v. El Tapatio, Inc. et al.*, Case No. 1:13-cv-00861-REB-BNB (D. Colo. June 13, 2014) (Doc. No.

58) (approving hybrid § 216(b) and Rule 23 Class/Collective action settlement and appointing

Brandt Milstein as class counsel).

### 3.       *Honestly Negotiated Settlement Agreement*

Given this court's direct involvement in two settlement conferences with the parties and

their counsel, this court knows first-hand that the case was honestly and persistently negotiated,

with both parties holding their ground when required.  The proposed settlement reflects a

recovery of 100% of actual and liquidated damages for the Class Members as to their overtime

and rounding FLSA and MWO claims.  Defendants assert that the scope of damages recovered

for the uniform damages meets or exceeds 100%.  These figures reflect the fact that there were

not significant issues of fact at dispute in this case, with the exception of the exact quantities of

uniform pieces.  Because there were not significant facts in dispute, and because the Class

Members' recovery is total, the proposed settlement reflects a reasonable compromise.

    **4.**      ***Fair and Reasonable Settlement, including that the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation***

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales.  Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e).  *See Gambrell v. Weber Carpet, Inc.,* No. 10–131–KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012).  To determine whether a proposed settlement under Fed. R. Civ. P. 23(e), is fair and equitable to all parties, courts apply the following fairness factors: (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *Fulton,* 2012 WL 1788140, at *3.

As previously noted, there were not significant issues of fact in dispute in this case but Defendants had equitable defenses to the claims.  Class Members who file claims will recover 100% of their actual damages and 100% of their potential liquidated damages, less attorney fees.  Both parties represent that based upon Defendants' review of its payroll records and practices, the settlement amount represents an accurate amount for alleged unpaid wages, liquidated damages and other damages.

Under these circumstances, a presumption of fairness attaches to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing courts rely on the adversarial nature

of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D.Mo. 2002) ("In evaluating the settlement, the Court[ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.")  The Court sees no evidence of fraud or collusion or any other factor which would undermine this presumption here.

Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power.  To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA.  *Baker,* 2014 WL 700096, at *2.  The record shows that there are approximately 177 similarly situated employees who were the subject of the wage and hour policies employed by Defendants and, if not remedied, could recur.  Defendants have no known history of non-compliance with the FLSA.

The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial, especially in light of the fact that the individual awards are not great and the likelihood that any one employee could economically fund a single case is very low.  Any further litigation in this matter would yield no benefit to the Class Members.  Moreover, given the inherent risks associated with further litigation, the Class Members may

recover less should the case proceed through trial.  Thus, the proposed settlement at this stage far

outweighs any potential benefits, if any at all, of further litigation.

### 5.  *Whether the Parties Think the Settlement is Fair*

The Parties represent that they believe that the settlement is fair and reasonable. (Joint

Mot. at 14.). The compromise represented by the settlement is eminently reasonable and fair to

both Plaintiff and the Class from the Plaintiff's and her counsel's perspective.

### 6.  *Reasonable Service Payment to Named Plaintiff Belice Pliego*

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class

action settlement.  *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003).  When evaluating the

reasonableness of an incentive award, courts may consider factors such as "'the actions the

plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted

from those actions, . . . the amount of time and effort the plaintiff expended in pursuing  the

litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id.*, (quoting *Cook v. Niedert*,

142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

294, 299 (N.D. Cal. 1995).

The stipulated $7,500.00 award here is appropriate and is commensurate with awards in

similar cases.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271(LTS), 2011 WL 9380874, at

*7 (S.D.N.Y. Sept. 21, 2011) (holding that a service award of $10,000 to the plaintiff in a FLSA

and state law wage class action was reasonable, stating "such service awards are common in

class action cases and are important to compensate plaintiffs for the time and effort expended in

assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a

litigant, and any other burdens sustained by plaintiffs.") (citing *Torres v. Gristede's Operating*

*Corp.*, Nos. 04-CV-3316(PAC), 08-CV-8531 (PAC), 08-CV-9627 (PAC), 2010 WL 5507892, at

*7 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding service awards of

$15,000 to each of 15 named plaintiffs reasonable); *Clark v. Ecolab, Inc.,* Nos. 07 Civ.

8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May

11, 2010) (granting service awards of $10,000 to each of 7 named plaintiffs).

The $7,500.00 service award here is appropriate because Plaintiff Pliego, an immigrant to

the United States, took a substantial risk in coming forward with reports of Defendants' wage

and hour law violations when no other employees were willing to do so. In fact, the parties assert

that Plaintiff Pliego feared that immigration and workplace consequences would result, and that

she might be subject to retaliation, should she report her concerns about Defendants' wage and

hour practices.  Plaintiff Pliego's fears of consequences for coming forward were apparently not

unfounded because at least one non-party Mexican restaurant allegedly offered her employment

prior to the filing of the suit, but revoked that offer after the suit was filed.   (Joint Mot. at 15.)

Plaintiff Pliego notes that a Google search of her name quickly shows a prospective employer

that she brought the instant suit against her former employers.

Plaintiff alleges that Ms. Pliego also expended significant effort in assisting her counsel

in reviewing and evaluating the voluminous documents and settlement offers and arguments put

forth by Defendants and in ensuring that Defendants' current and former employees recover the

unpaid wages they are due.  Ms. Pliego attended the settlement conference before Judge Tafoya

on June 1, 2015 and represented the Class's interests. Ms. Pliego took real risks and worked hard

to make sure that the Class Members recovered the wages they are due.

This court finds, therefore, that the proposed service award of $7,500.00 to Plaintiff is reasonable. *See*, *e.g.*, *Van Vranken*, 901 F. Supp. at 300 (approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

## 7.    Release Language in Settlement Agreement.

Under the Settlement Agreement, the parties have provided that a Rule 23 Class Member who does not opt out of the settlement proposed herein, will release all claims that could have been brought in the litigation, including those claims under the FLSA.  Courts have questioned whether the extinguishment of FLSA claims through a Rule 23 class action indirectly contravenes the opt-in requirements under 29 U.S.C. § 216(b).  *See, e.g., La Parne v. Monex Deposit Co.,* No. 08–0302–DOC, 2010 WL 4916606, at *3 (C.D.Cal. Nov.29, 2010); *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2014 WL 3907794, at *6 (W.D.Mo. Aug. 11, 2014.)

This court is in agreement with courts which have found that normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, thus binding non opt-out Rule 23 Class Members who do not specifically opt-in to the release of FLSA claims to the ultimate judgment, unless such a claimant shows grounds for collateral attack on the judgment.  *Kuncl*, 660 F. Supp. 2d at 1250.  *See also Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014

WL 923524, at *15 (S.D.Tex. Feb. 13, 2014) (*res judicata* bars a subsequent FLSA suit when predicated on the same facts as a previously settled Rule 23 action.)

This court has determined that any problems with the release language with respect to FLSA claims can be ameliorated by ensuring that the Notice to Class Members and the claim forms conspicuously state the differences between federal and state law claims, describe what federal rights the claimants are releasing by returning the claim form, and stating clearly that the federal claims for which release would be given upon the filing of a claim include those arising under the FLSA.  This court anticipates some revisions in this regard will be made to the proposed Notice at the hearing scheduled herein.

### C.      *Class Notice*

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) also requires that such notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(v) the binding effect of a class judgment on members under Rule 23(c)(3).

Because of the length of time that has transpired since the parties' submission of the "Joint Motion for Preliminary Approval of Proposed Class Action Settlement" [Doc. No. 70] as well as the recent California litigation suggesting increased emphasis on the Release of future claims, the court shall set a hearing to discuss and finalize the Notice to Class form, the Claim Forms themselves and the setting of a fairness hearing.

It is therefore **ORDERED**

"Joint Motion for Preliminary Approval of Proposed Class Action Settlement" [Doc. No. 70] is **GRANTED**.

The court certifies the Rule 23 Class and the FLSA Collective settlement class which shall be defined as, "All individuals employed by Defendants at the Westminster and Lone Tree Los Arcos Restaurants between June 17, 2011 and July 20, 2014."

The Court preliminarily approves the Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Plaintiff Class.

The Court approves Brandt Milstein, Esq. as class counsel.

The Court approves Plaintiff Belice Pliego as class representative.

The Court preliminarily approves Settlement Services, Inc. as Settlement Administrator.

A telephonic **hearing is scheduled for February 16, 2016 at 11:30 a.m.** before Magistrate Judge Kathleen M. Tafoya.  Parties should be prepared to discuss revisions to the Class Notice and claim forms, including relevant dates for inclusion.  **The parties shall initiate a conference call and contact chambers at 303-335-2780 at the time of the hearing.**

DATED this 8th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge